IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **CORNELL JONES** § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | |
| § | |
| **LOVEBOND COMMUNITY** § | CIVIL ACTION NO. 3:20-cv-20-2099 |
| **OUTREACH LLC AND DARRYL** § | |
| **MASON** § | |
| § | |
| *Defendants* § | |
| § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Cornell Jones now files this Original Complaint against Defendants Lovebond Community Outreach, LLC, and Darryl Mason for violations of the Fair Labor Standards Act and defamation, as follows:

### I. PARTIES

1. Plaintiff Cornell Jones is an individual residing in Tarrant County, Texas.

2. Defendant Lovebond Community Outreach LLC, ("Lovebond") is a limited liability company organized under the laws of the State of Texas, doing business in the State of Texas, with its principal place of business in Dallas County, Texas. It may be served with process through its registered agent, Byron Whitaker, 8035 East R.L. Thornton Freeway, Suite 120, Dallas, Texas, 75228.

3. Defendant Darryl Mason is an individual believed to be residing in Dallas County, Texas. He can be served with process at his place of business, 8035 East R.L. Thornton Freeway, Suite 120, Dallas, Texas, 75228.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter under 28 U.S.C. §1331, as it raises claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.* The Court has pendant jurisdiction over Plaintiff's state-law claims for defamation and defamation *per se.*

5. Venue is proper in the Northern District of Texas, Dallas Division, because all or a substantial part of the actions complained of occurred in Dallas, Texas.

## III. FACTS

6. Lovebond provides mobile professional counseling services to youth in Dallas homes, schools, and other locations in the community.

7. Mr. Jones was hired by Lovebond in September 2019 as a Qualified Mental Health Professional-Community Support. He was subsequently told that he had been improperly classified, and his title was changed to Community Support Specialist (CSSP). His job duties included locating support services for clients of Lovebond, generating new clients, and assisting with group and individual counseling and case management. His duties were primarily performed outside the office, coordinating and visiting with clients and working with schools to identify students who might benefit from Lovebond's services.

8. Mr. Jones was hired by Lovebond as an "independent contractor" and was paid based on hours billed. Although Mr. Jones was paid on a Form 1099 basis, everything else about his relationship with Lovebond was consistent with being an employee.

9. For example, Mr. Jones worked for Lovebond exclusively and full-time throughout their relationship, commonly billing more than eighty (80) hours per week. He received training from Lovebond when he was brought on board and had to complete such training before he was allowed to work. He wore a Lovebond identification badge. He was provided with a gas allowance and was reimbursed for his expenses. He did not offer his services to competitors or to the general public. He was subject to a 90-day "probationary period" when hired. He was not in business for himself, and he had no opportunity for profit or loss with Lovebond.

10. Mr. Jones was expected to bill more than forty (40) hours per workweek and regularly did so with the consent and encouragement of Lovebond. He reported such hours to Lovebond, and those hours appeared on his paystubs. However, Lovebond only paid him straight time for hours worked in excess of forty (40) per workweek rather than the overtime premium mandated by the FLSA. Because Mr. Jones was paid hourly, he was not subject to any exemption under the FLSA.

11. At all times, Mr. Jones was an excellent CSSP for Lovebond. His relationships with parents were superb, leading to him having a loyal group of clients and being able to generate far more billable hours than most of his peers. He nurtured

positive relationships with school administrators, thus generating a significant number of referrals from the schools.

12. Two issues arose that ostensibly led to Mr. Jones's termination from Lovebond. The first was when a four-year old responded to verbal discipline from Mr. Jones by asking if he were going to get spanked. This allegedly raised a concern that Mr. Jones might be spanking the child. However, the parents rejected that suspicion immediately and explained that the child was spanked *at home* and responded to all discipline by asking if he were going to be spanked. Lovebond accepted this explanation, conducted no additional investigation, and never even informed Mr. Jones that an issue had been raised.

13. A second concern arose when a child mentioned a "spanking game" Mr. Jones had played with the children. In the game, the children playfully suggest that a child is going to be spanked for some minor issue that clearly would not lead to any such thing. The game was meant to be an absurd form of fun but also a way that a child might come forward with any issues of abuse. Despite the name of the game, it involved no touching of the children.

14. In February 2020, Darryl Mason, VP of Operations, met with Mr. Jones and discussed both of these "incidents." Mr. Jones explained both situations. He expressly denied spanking the children or otherwise touching the children in any way other than what was strictly professional.

15. Despite a lack of evidence of any misconduct, Mr. Mason terminated Mr. Jones's relationship with Lovebond on February 7, 2020.

16. Subsequently, concerned parents contacted Lovebond wanting to know why Mr. Jones no longer was with them and threatening to stop using Lovebond's services if Mr. Jones did not return. Upon information and belief, Mr. Mason responded that there had been two allegations of misconduct regarding Mr. Jones (even though the first allegation was so deficient in terms of corroboration that it was not investigated nor even discussed with Mr. Jones). Mr. Mason then went a step further and falsely told the parents that Mr. Jones "had admitted to both allegations with different kids." This claim was patently false and was tantamount to claiming that Mr. Jones had admitted to child abuse which was a lie.

17. Upon information and belief, Mr. Mason made these statements because he was afraid of losing clients who had no intention of staying with Lovebond if Mr. Jones was not there. He apparently believed that the best way to avoid such an eventuality was to besmirch Mr. Jones's reputation by falsely claiming that he admitted to misconduct with children. Had he been sincere in his contention that Mr. Jones had admitted to misconduct and his "concern" for the children, he would have reported such to the proper authorities as required by law. His failure to do so was a tacit admission that his statements were false.

## IV. CAUSES OF ACTION

### A. Unpaid Overtime—FLSA

18. Plaintiff re-alleges and incorporates Paragraphs 1-17 herein by reference as if set out in full.

19. Lovebond and Mason are employers engaged in commerce within the meaning of the FLSA (29 U.S.C. §§ 206(a) and 207(a)). Defendants regularly engage in interstate commerce in a value of more than $500,000 annually.

20. Mr. Jones was an employee of Lovebond and Mason as defined under the FLSA. He was regularly engaged in interstate commerce through use of the telephone and internet, and the daily use of goods and services shipped through interstate commerce.

21. As a part of their regular business practices, Lovebond and Mason engaged in a pattern, practice, or policy of willfully violating the FLSA with respect to Plaintiff by instructing and approving of him working overtime but failing to pay him the time-and-a-half premium required by the FLSA for hours worked in excess of forty (40) per workweek.

22. Plaintiff fell under no exemption from the overtime requirements of the FLSA.

23. Neither Lovebond nor Mason made a good-faith effort to comply with the FLSA with respect to their compensation of Plaintiff.

24. As a result of Defendants' violations of the FLSA, Plaintiff has suffered damages by being denied overtime wages in accordance with 29 U.S.C. § 201, *et seq.*, which he seeks to recover herein.

25. Defendants' violations of the FLSA were willful, thus justifying an award of liquidated damages.

26. In addition, Plaintiff is entitled to recover his reasonable and necessary attorney's fees under the FLSA.

### B. Defamation/Defamation *Per Se*

27. Plaintiff re-alleges and incorporates Paragraphs 1-26 herein by reference as if set out in full.

28 Defendant Mason has made, and upon information and belief continues to make, false and defamatory statements regarding Plaintiff. Such statements have been made directly to third parties.

29. Defendant Mason made such statements with a knowledge of their falsity or with reckless disregard of their truthfulness.

30. Defendant Mason made such statements in the course and scope of his employment with Lovebond and for the purpose of furthering Lovebond's financial interests. Such statements were made individually and as an agent of Lovebond.

31. As a proximate result of such defamatory conduct, Plaintiff has suffered damages, the recovery of which is sought herein.

32. Alternatively, the comments described herein amount to a false allegation of criminal conduct and thus constitute defamation *per se*.

33. Defendants made such defamatory statements willfully and intentionally and with full knowledge of their falsity, thus justifying the imposition of punitive damages.

## V. PRAYER

WHEREFORE, Plaintiff Cornell Jones requests that the Court enter judgment in his favor and order that he recover from Lovebond and Mason the following:

1. Actual damages;

2. Liquidated damages;

3. Compensatory damages;

4. Punitive damages;

5. Costs of court;

6. Reasonable and necessary attorney's fees;

7. Pre- and post-judgment interest at the highest rate permitted by law; and

8. Any additional relief to which the Court finds Plaintiff justly entitled.

    Respectfully submitted,

    /s/ R.S. Ghio

    R.S. Ghio
    Texas State Bar No. 00787531
    **DISMUKE & WATERS, P.C.**
    2000 E. Lamar Blvd, Ste. 500
    Arlington, Texas 76006
    Tel.: 817-277-2077
    rghio@dw-law.com
    ATTORNEY FOR PLAINTIFFS